# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**WESTPORT INSURANCE CORPORATION,**

          Plaintiff,

-vs-                                                 **Case No. 6:10-cv-222-Orl-28KRS**

**VN HOTEL GROUP, LLC, CHOICE HOTELS INTERNATIONAL, INC., V.J. CHUKKAPALLI, WALTER COOPER, ELIZABETH COOPER, ANDREW WHEATLEY, VALERIE WALKER, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF PAUL WALKER, DECEASED,**

          **Defendants.**

---

## ORDER

This is a declaratory judgment action regarding insurance coverage. The parties dispute whether Plaintiff Westport Insurance Corporation ("Westport") must defend and indemnify Defendants VN Hotel Group, LLC ("VN Hotel") and Choice Hotels International, Inc. ("Choice") (collectively, "Named Insureds") in two underlying lawsuits[1] alleging that three

---

[1] Walter Cooper, Elizabeth Cooper, and Andrew Wheatley have filed suit against VN Hotel, Choice, Sivan Kolli, Rani Kolli, V.J. Chukkapalli, Aquasol Commercial Chemicals, and Aquasol Controllers, Inc. in this Court, Case No. 6:09-cv-1540-Orl-28DAB ("Cooper Suit"). Valerie Walker, as the personal representative of the Estate of Paul Walker, deceased, has filed suit against VN Hotel, Choice, VN Hotel Management, LLC, V.J. Chukkapalli, 7400 Investments, LLC, and Canada Dry Investments, LLC in the Circuit Court for the Ninth Judicial Circuit in and for Orange County, Florida, Case No. 2009-CA-039552-O ("Walker Suit").

individuals contracted Legionnaires' disease from the spa tub and guest room showers of the Quality Suites hotel ("Quality Suites") located at 7400 Canada Avenue in Orlando, Florida.

The case is now before the Court on Westport's Motion for Summary Judgment seeking a declaration that Westport has no duty to defend or indemnify the Named Insureds in connection with the Cooper and Walker Suits. (Doc. 44). All named Defendants have filed responses in opposition. (Docs. 47, 49, 50, 58). In addition, Choice and VN Hotel have submitted Cross Motions for Partial Summary Judgment seeking a declaration that Westport has a duty to defend them in connection with the Cooper and Walker Suits. (Docs. 47, 58). Westport has filed a reply to the Defendants' responses to the Motion and a response opposing the Cross Motions for Partial Summary Judgment. (Doc. 59).

Having considered these submissions and the evidentiary support attached thereto, the Court concludes that Westport has a duty to defend the Named Insureds in connection with the Cooper and Walker Suits and that it is premature to determine whether Westport has a duty to indemnify.

I. Undisputed Facts

Westport issued a commercial general liability insurance policy, number WCP137008238801 ("Policy"), to VN Hotel and Choice for the Quality Suites, effective from February 2, 2008 to February 2, 2009. (Doc. 44-4 at 3, 5; Doc. 44-5 at 50[2]). The Policy

---

[2]The Policy–which is attached to Westport's Motion for Summary Judgment (Docs. 44-4 and 44-5)–does not contain page numbers; therefore, all pincites are to the electronic filing page number.

obligates Westport to defend and indemnify VN Hotel and Choice against claims of bodily injury or property damage, subject to several conditions and exclusions from coverage. (Doc. 44-5 at 20).

The plaintiffs in the Cooper and Walker Suits allege that they were guests at the Quality Suites while the Policy was in effect and that during their stay they contracted Legionnaires' disease. (Doc. 47-1 ("Cooper TAC") ¶¶ 11, 19-20; Doc. 47-2 ("Walker SAC") ¶¶ 18-19). According to the underlying complaints, VN Hotels and Choice negligently maintained the hotel's potable water and plumbing systems, causing an accumulation of Legionella bacteria in the water. (Cooper TAC ¶¶ 22-25, 32-35, 76-79, 86-89; Walker SAC ¶¶ 50-60, 79-89). Plaintiffs in the Cooper and Walker Suits allege that, as a consequence thereof, they were infected with Legionnaires' disease when they inhaled and ingested heated water vapor from the guest room showers and hotel spa tub. (Cooper TAC ¶¶ 17-20; Walker SAC ¶¶ 32-40).

## II. Summary Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate 'in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law.'" *Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co.*, 541 F. Supp. 2d 1295, 1297 (M.D. Fla. 2008) (quoting *TIG Ins. Co. v. Smart Sch.*, 401 F. Supp. 2d 1334, 1337 (S.D. Fla. 2005)). However, " 'summary judgment may only be decided upon an adequate record,' "

*Snook v. Trust Co. of Ga. Bank*, 859 F.2d 865, 870 (11th Cir. 1988) (quoting *WSB-TV v. Lee*, 842 F.2d 1266, 1269 (11th Cir. 1988)), and therefore, summary judgment should only be rendered if the party opposing the motion has had a sufficient opportunity for discovery, *Id.*

"Cross motions for summary judgment do not change the standard." *Id.* (quoting *Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church*, 499 F.3d 32, 38 (1st Cir. 2007)). "Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Id.* at 1297-98 (quoting *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007)). "Even where the parties file cross motions pursuant to Rule 56, summary judgment is inappropriate if disputes remain as to material facts." *Id.* at 1298 (quoting *Christian Heritage*, 483 F.3d at 1030).

## III. Adequacy of the Record

Defendants Walter Cooper, Elizabeth Cooper, and Andrew Wheatley ("Cooper and Wheatley Defendants") assert that summary judgment is improper at this stage because the record is inadequate. (Doc. 49 at 4-5). In support of their argument, the Cooper and Wheatley Defendants note that they have outstanding discovery requests, the answers to which, they assert, may prove that the Named Insureds were covered by a different insurance policy than the one at issue. (*Id.* at 5).

The Cooper and Wheatley Defendants' argument is based on a Florida law that requires an insurer to give 45 days prior notice of changes in a renewal policy. § 627.4133, Fla. Stat. Under this statute, if the insurer fails to give the proper notice, the prior policy

remains in effect until 45 days after the proper notice is given or the insured obtains replacement coverage. *Id.* Therefore, the Cooper and Wheatley Defendants argue that because they stayed at the Quality Suites less than 45 days after the Policy took effect and because there is ongoing discovery as to whether Westport gave the Named Insureds sufficient notice of any changes in coverage under the Policy, the Court should defer ruling on the pending motions until that discovery is completed. (Doc. 49 at 5).

Neither of the Named Insureds raises this argument or otherwise seeks to postpone a ruling on the instant motions, and the Cooper and Wheatley Defendants do not cite any authority for the proposition that the protections afforded by section 627.4133 may be asserted by persons other than Named Insureds. *See St. Paul Fire & Marine Ins. Co. v. Valdivia*, 771 So. 2d 1229, 1230 (Fla. 3d DCA 2000) (noting that the purpose of section 627.4133 is to " 'enable an insured to obtain coverage elsewhere before the insured is subjected to risk without protection' " (quoting *U.S. Fire Ins. Co. v. S. Sec. Life Ins. Co.*, 710 So. 2d 130, 131 (Fla. 5th DCA 1998))); *see also Marchesano v. Nationwide Prop. & Cas. Ins. Co.*, 506 So. 2d 410, 413 (Fla. 1987) (noting that statutory notice under an analogous provision coupled with the insured's failure to act upon the notice binds the insured to the terms set forth in the notice). Accordingly, the Cooper and Wheatley Defendants' outstanding requests for discovery regarding Westport's compliance with section 627.4133 do not justify postponing ruling on the instant Motions.

IV. Merits of the Motions for Summary Judgment

In its Motion, Westport requests a declaration as to its obligations regarding both its duty to defend and its duty to indemnify the Named Insureds in the underlying suits. Under

the Policy, Westport has a duty to indemnify the Named Insureds for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which [the Policy] applies," and a duty to defend the Named Insureds "against any 'suit' seeking those damages." (Doc. 44-5 at 20). The parties' dispute centers around whether the Policy applies to the "bodily injury" alleged in the underlying complaints. Westport contends that the underlying complaints are not covered because they fall into the Policy's Pollution Exclusion, or in the alternative the Policy's Fungi or Bacteria Exclusion. Defendants, on the other hand, argue that the exclusions do not apply to the underlying complaints and that even if they did, the underlying allegations trigger the exceptions to the exclusions.

A. Principles of Insurance Contract Interpretation

"The interpretation of an insurance contract is a question of law." *Kattoum v. N.H. Indem. Co.*, 968 So. 2d 602, 604 (Fla. 2d DCA 2007). It is undisputed that Florida law governs the interpretation of the insurance policies at issue here. "Florida law provides that insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). "The scope and extent of insurance coverage is determined by the language and terms of the policy." *Bethel v. Sec. Nat'l Ins. Co.*, 949 So. 2d 219, 222 (Fla. 3d DCA 2006). The burden rests on the insurer to show that exclusions in a policy apply. *See, e.g., U.S. Concrete Pipe Co. v. Bould*, 437 So. 2d 1061, 1065 (Fla. 1983).

Where language in a policy is plain and unambiguous, there is no special construction or interpretation required, and the plain language in the contract is to be given the meaning

which it clearly expresses. *Jefferson Ins. Co. of N.Y. v. Sea World of Fla., Inc.*, 586 So. 2d 95, 97 (Fla. 5th DCA 1991); *U.S. Liab. Ins. Co. v. Bove*, 347 So. 2d 678, 680 (Fla. 3d DCA 1977). The fact that the policy does not provide definitions of certain terms does not automatically render the terms ambiguous. *Jefferson Ins. Co.*, 586 So. 2d at 97 (citing *Travelers Ins. Co. v. C.J. Gayfer's & Co., Inc.*, 366 So. 2d 1199, 1201 (Fla. 1st DCA 1979)).

On the other hand, "[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous." *Auto-Owners*, 756 So. 2d at 34. "Ambiguous policy provisions are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy." *Id.* "Likewise, ambiguous insurance policy exclusions are construed against the drafter and in favor of the insured." *Id.* "[E]xclusionary clauses are construed even more strictly against the insurer than coverage clauses." *Id.* (citations omitted). "[I]n construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." *Id.*; *see also* § 627.419(1), Fla. Stat. ("Every insurance contract shall be construed according to the entirety of its terms and conditions . . . ."). "[A]ny apparent inconsistency should be reconciled if possible." *Fla. Farm Bureau Ins. Co. v. Birge*, 659 So. 2d 310, 312 (Fla. 2d DCA 1994).

### B. Duty to Defend

Under Florida law, whether there is a duty to defend is determined by the facts and legal theories alleged in pleadings against the insured. *Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995) (citations omitted). Furthermore, "if the complaint alleges facts showing two or more grounds for liability, one being within the

insurance coverage and the other not, the insurer is obligated to defend the entire suit." *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 813-14 (Fla. 1st DCA 1985) (citations omitted).

" 'When an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation.' " *Acosta, Inc. v. Nat'l Union Fire Ins. Co.*, 39 So. 3d 565, 574 (Fla. 1st DCA 2010) (quoting *Castillo v. State Farm Fla. Ins. Co.*, 971 So. 3d 820, 824 (Fla. 3d DCA 2007)). "If the allegations of the complaint leave any doubt regarding the duty to defend, the question must be resolved in favor of the insured requiring the insurer to defend." *Baron Oil*, 470 So. 2d at 814 (citations omitted).

### i. Pollution Exclusion

Westport first argues that it has no duty to defend because the underlying allegations fall within the Pollution Exclusion. The Pollution Exclusion provides that the Policy does not cover:

> (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":
>
>> (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

(Doc. 44-5 at 22). The Policy defines "Pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed." (*Id.* at 34).

The parties heavily dispute whether Legionella bacteria can be considered a

"pollutant" as defined by the Policy. Westport argues that Legionella bacteria are "contaminants" and thus "pollutants" excluded from coverage; Defendants respond that such an interpretation would stretch the Pollution Exclusion beyond its reasonable parameters.

The Policy does not explicitly define "contaminant," but the words modifying "contaminant" and the stated examples of "pollutants" unambiguously show that Legionella bacteria are not "pollutants." *See Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1138-40 (Fla. 1998) (finding that this definition of "pollutants" was unambiguous). Unlike Legionella bacteria, all of the enumerated examples of "pollutants" are non-living and readily described as either "solid, liquid, gaseous or thermal irritants or contaminants." (Policy at 15). Although Legionella bacteria may be contaminants in the abstract,[3] they are living organisms and not readily classified as "solid, liquid, gaseous, or thermal" substances, which are the only contaminants defined as "pollutants" under the Pollution Exclusion. *See Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 13 P.3d 785, 789 (Ariz. Ct. App. 2000) (reasoning that the breadth of the terms "contaminant" and "irritant" prompted modifiers such as "solid," "liquid," and "gaseous" and noting that water-borne bacteria defy description as solid, liquid, gaseous, or thermal irritants or contaminants). The distinction between Legionella bacteria and "pollutants" is confirmed by the existence of separate exclusions for pollution and for bacteria. *See Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 941 (Fla. 1979) ("Every provision in a contract should be

---

[3]As noted by Westport, several United States government agency websites describe Legionella bacteria as "contaminant[s]" of aerosols and drinking water and the Cooper and Walker Suits refer to Legionella bacteria as "contaminants" of shower and spa water. (Doc. 44 at 4-5, 9-12).

given meaning and effect and apparent inconsistencies reconciled if possible.").

While a district court in the Southern District of Florida in *Nova Casualty Co. v. Waserstein*, 424 F. Supp. 2d 1325 (S.D. Fla. 2006), found living organisms, microbial populations, microbial contaminants, and indoor allergens to be "pollutants" as defined here because those substances were solids and had a contaminating effect, *id.* at 1334-36, this Court respectfully disagrees with that conclusion. Even if living organisms are properly classified as "solids," the explication of "pollutants" in *Waserstein* would permit any living organism with a contaminating effect–including bacteria, insects, rodents, and the like–to be "pollutants" triggering the Pollution Exclusion. The broad realm of "pollutants" under *Waserstein* is too far afield from the enumerated examples of "pollutants"–smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste–to support adoption of *Waserstein*'s reasoning. (Policy at 15); *see* § 627.419(1), Fla. Stat. ("Every insurance contract shall be construed according to the entirety of its terms and conditions . . . ."). Accordingly, Legionella bacteria are not "pollutants," and the Pollution Exclusion is inapplicable.

Moreover, even if Legionella bacteria were "pollutants" as defined in the Policy, the Pollution Exclusion still would not apply because both of the underlying complaints clearly fall into the exception to the Pollution Exclusion which states that, notwithstanding the Pollution Exclusion, the Policy will cover:

> "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from . . . equipment that is used to heat water for personal use, by the building's occupants or their guests . . . .

(Doc. 44-5 at 22). Both of the underlying complaints allege that negligent maintenance of the Quality Suites potable water and plumbing systems led to the accumulation of Legionella

bacteria in the water. (Cooper TAC ¶¶ 22-24; Walker SAC ¶¶ 25, 27, 40, 45-60). As alleged, the Quality Suites potable water and plumbing systems include the hotel's hot water heating system, (Cooper TAC ¶ 22; Walker SAC ¶¶ 40, 43-44), and the plain meaning of "equipment that is used to heat water for personal use" includes the hot water heating system where the Legionella bacteria allegedly originated. Additionally, both of the underlying complaints allege that the heating of the water and the rapid circulation of the guest room shower heads allegedly caused Legionella-infected water to vaporize and become inhaled and ingested by three individuals who subsequently contracted Legionnaires' disease. (Cooper TAC ¶¶ 17-20; Walker SAC ¶ 29). Thus, as alleged, bodily injury was caused by vapor originating from equipment used to heat water for personal use. Accordingly, the underlying complaints fall within the exception and therefore, even if Legionella bacteria were determined to qualify as "pollutants," the Pollution Exclusion would not relieve Westport of its duty to defend.

### ii. The Fungi or Bacteria Exclusion

Westport also asserts that another exclusion in the Policy–the Fungi or Bacteria Exclusion–applies. Pursuant to Subpart "a" of the Fungi or Bacteria Exclusion, the Policy does not cover the following:

> "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

(Doc. 44-5 at 51).

The parties dispute whether the spa tub is a "structure" and thus whether the alleged inhalation and ingestion of Legionella-containing water from the spa tub at the Quality Suites triggers subpart "a" of the Fungi or Bacteria Exclusion.[4] "Structure" is not defined by the Policy, but it appears in the context of the phrase "building or structure, including its contents." (*Id.*). Context is critical when defining the term "structure," as it may be attributed a wide range of meanings. *See, e.g., Mahon v. Cnty. of Sarasota*, 177 So. 2d 665, 666 (Fla. 1965) (noting that the undefined term "structure" in a property-maintenance ordinance left the definition of the term "to the whim or caprice of the administrative body"); *Costin v. Branch*, 373 So. 2d 370, 370 (Fla. 1st DCA 1979) (finding that "structure" as used in an ocean-view preservation easement does not include septic tanks, drain fields, and water lines); *Skylake Prop. Owners Ass'n, Inc. v. Powell*, 637 S.E.2d 51, 54 (Ga. Ct. App. 2006) (construing "structure" in a restrictive covenant to mean house, garage, carport, playhouse, outbuilding, and the like); *DeNina v. Bammel Forest Civic Club, Inc.*, 712 S.W.2d 195, 198

---

[4]The Parties do not dispute that the guest room showers fall within the Fungi or Bacteria Exclusion because the showers are "contents" of the building. However, the Named Insureds argue that because the spa tub is outside the building it cannot be considered "contents" of the building. Although undisputed evidence beyond the complaints in the Cooper and Walker Suits shows that the spa tub is located in the courtyard of the Quality Suites, (Doc. 47-3; Doc. 58-1 at 1-2), only the complaints themselves may be considered in determining whether Westport has a duty to defend. *Baron Oil*, 470 So. 2d at 813; *see also Kings Point W., Inc. v. N. River Ins. Co.*, 412 So. 2d 379, 380 (Fla. 2d DCA 1982) (holding that the trial court erred in looking beyond the allegations of the complaint to determine whether a duty to defend arose). But, because the underlying complaints do not indicate whether the spa tub is inside or outside, the ambiguity must be construed in favor of the Named Insureds. *See Baron Oil*, 470 So. 2d at 814 ("If the allegations of the complaint leave any doubt regarding the duty to defend, the question must be resolved in favor of the insured requiring the insurer to defend." (citations omitted)). Consequently, for purposes of this Order, it is assumed that the spa tub is outside the building and therefore is not "contents" of the building.

(Tex. Ct. App. 1986) (finding that a satellite dish was not a "structure" where the term was merely used to limit property use to single-family, as opposed to multi-family, residences). Narrowly defined, "structure" means "an edifice or building of any kind"; however, it can be broadly interpreted to mean "anything that is built or constructed." *Hartford Acc. & Indem. Co. v. Crider*, 392 F. Supp. 162, 170 (N.D. Ill. 1974); *accord* Black's Law Dictionary 1559 (9th ed. 2009) (defining structure as "[a]ny construction, production, or piece of work artificially built up or composed of parts purposefully joined together <a building is a structure>").

Although the broad definition of "structure" clearly embraces the spa tub, there is no basis in the Policy or applicable law for applying that definition. In construing a collapse hazard exclusion to a general liability insurance policy that turned on the phrase "building or structure," the court in *Crider* applied a narrow definition of "structure," reasoning as follows:

> The use of the specific word building immediately followed by the word structure, requires that structure be taken in its narrow sense. Otherwise building is unnecessary since structure would, in the broad sense, include a building. Therefore, the word structure is limited to mean structures such as buildings.

*Crider*, 392 F. Supp. at 170. This reasoning is sound and is adopted here. Moreover, while the definitions of "building" and "structure" cannot be equated so as to ignore the disjunctive wording "building or structure," the ambiguous term "structure" must be strictly construed against the insurer and in favor of coverage. *Auto-Owners*, 756 So. 2d at 34. Applying the narrow definition of "structure" from *Crider*, a spa tub is not a "structure such as [a] building[]"

and thus is not a "structure" under subpart "a" of the Fungi or Bacteria Exclusion.[5] *Crider*, 392 F. Supp. at 170. Thus, the allegations in the Cooper and Walker Suits involving the contraction of Legionnaires' disease from the spa tub do not trigger subpart "a" of the Fungi or Bacteria Exclusion.

Furthermore, as was the case with the Pollution Exclusion, there is an exception to the Fungi or Bacteria Exclusion that bars its application in any event.[6] That exception–the "Consumption Exception"–provides that the Fungi or Bacteria Exclusion "does not apply to any 'fungi' or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption." (Doc. 44-5 at 51). Therefore, even if subpart "a" of the Fungi or Bacteria Exclusion was satisfied by the allegations of the Cooper and Walker Suits, the Consumption Exception precludes a finding that Westport has no duty to defend pursuant to the Fungi or Bacteria Exclusion.[7] There are no Florida decisions interpreting the

---

[5] Westport cites *AMCO Insurance Co. v. Swagat Group, LLC*, No. 07-3330, 2009 WL 331539 (C.D. Ill. Feb. 10, 2009), to support its argument that the spa tub is a "structure" within the meaning of subpart "a." In *AMCO*, the court summarily determined that the allegedly Legionella-infested swimming pool and hot tub satisfied subpart "a" of the Fungi or Bacteria Exclusion at issue here, seemingly because the pool and hot tub were on the "hotel's premises." *Id.* at *4. However, the *AMCO* court did not address the issue of whether the hot tub was a structure, and it is doubtful that "structure" as used in subpart "a" includes all structures, broadly defined, on the "premises" of the Quality Suites, as the term "premises" appears throughout the Policy but not in the Fungi or Bacteria Exclusion.

[6] As Westport points out, the burden of proving the applicability of an exception to an exclusion rests on the insureds. *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997). However, that burden has been met.

[7] Although the parties do not dispute that the guest room showers fall within the Fungi or Bacteria exclusion because they are "contents" of the building, Defendants argue that the Consumption Exception applies equally to the spa tub and guest room showers. The Court agrees.

Consumption Exception at issue in this case, but this Court finds the reasoning in *Nationwide Mutual Fire Insurance Co. v. Dillard House, Inc.*, 651 F. Supp. 2d 1367 (N.D. Ga. 2009), persuasive.

In *Dillard House*, water in a hotel hot tub from which a bather allegedly contracted Legionnaires' disease was found to be "a good or product intended for bodily consumption" under the same Consumption Exception at issue here. *Id.* at 1370, 1379. At the outset, the court determined that bathing water in a hotel hot tub is a good, and there is no basis for deviating from that reasoning here. *Id.* at 1376 n.12. The term "good" plainly means "something that has economic utility or satisfies an economic want." *Id.* (quotations omitted). Like the hot tub water in *Dillard House*, the vaporized spa tub and shower water at issue in the Cooper and Walker Suits has economic utility, as water is integral to a functioning spa tub or shower. *Id.* Thus, the spa tub and shower water referenced in the Cooper and Walker Suits is a "good."

The lone remaining issue is whether the spa tub and shower water was "intended for bodily consumption." In *Dillard House,* the court concluded that the word "consumption" is "susceptible to multiple reasonable interpretations," and determined that the second definition of consumption in Webster's Third New International Dictionary, Unabridged–"the utilization of economic goods in the satisfaction of wants"–was the most appropriate in the context of the case. *Id.* at 1378. The *Dillard House* court then reasoned that hotel guests bathing in a hot tub consumed the water because they entered the tub to satisfy a desire or want. *Id.* The court further reasoned that the consumption was "bodily" because the hotel guests entered the hot tub to satisfy wants "relating to the body." *Id.* at 1379.

Westport argues that the reasoning in *Dillard House* is flawed because it views the words "bodily" and "consumption" in isolation.[8] (Doc. 44 at 15-16). Westport then urges the Court to rely on *AMCO*, rather than *Dillard House*. Westport's arguments are unavailing.

Contrary to Westport's contention, the court in *Dillard House* properly viewed the term "bodily" as a modifier of "consumption," as is apparent from the following passage:

> Having already determined that the relevant good, water in a hot tub, is intended for consumption—because it is intended for the "utilization . . . in the satisfaction of wants"—the court need only decide whether the particular type of consumption intended is "relating to the body." Hot tubs are created for the purpose of bathing one's body, making it difficult to conceive of any modifier of "consumption" that would more aptly describe the type of "utilization . . . in the satisfaction of wants" facilitated by a hot tub.

651 F. Supp. 2d at 1379.

Furthermore, *AMCO* is not persuasive. Although the court in *AMCO* determined that the allegedly Legionella-infested swimming pool and hot tub on a hotel's premises satisfied subpart "a" of the Fungi or Bacteria Exclusion at issue here, 2009 WL 331539, at *4, it did not discuss any exception to the exclusion. And, even though Westport asserts that the policy at issue in *AMCO* contained the same Consumption Exception, the court's complete

---

[8]Westport additionally argues that the *Dillard House* court's reliance on *Union Insurance Co. v. Soleil Group*, No.2:07-CV-3995-PMD, 2009 U.S. Dist. LEXIS 83770 (D.S.C. May 13, 2009) and *Wiseman-Hughes Enterprises v. Harleysville Lake States Insurance Co.*, No. 07 C 0336, 2009 WL 972857 (N.D. Ill. April 8, 2009), was inappropriate because the policy in *Soleil* only addressed "consumption" rather than "bodily consumption" and *Wiseman-Hughes* dealt with drinking water rather than water in a hot tub or shower. Although Westport is correct in its assessment of *Soleil* and *Wiseman-Hughes*, it is incorrect in asserting that the *Dillard House* court relied on those cases to interpret the term "bodily consumption." In fact, the *Dillard House* court did not even cite to *Wiseman-Hughes* during its discussion of the term, and it declined to follow *Soleil*'s definition of consumption. *Dillard House*, 651 F. Supp. 2d at 1378-79.

silence on the matter suggests that it did not consider the exception when interpreting the policy.

Accordingly, this Court agrees with the sound reasoning in *Dillard House*. As noted, the word "consumption" is "susceptible to multiple reasonable interpretations," *Dillard House*, 651 F. Supp. 2d at 1378, and therefore, under Florida law, the term must be construed in favor of the insureds, *Auto-Owners*, 756 So. 2d at 34. Additionally, the *Dillard House* definition of "bodily consumption" as "the utilization of economic goods in the satisfaction of wants" which "relate to the body" is equally applicable in the instant case. As such, the facts alleged in the Cooper and Walker Suits satisfy the Consumption Exception, and the Fungi or Bacteria Exclusion does not exempt Westport from defending the Cooper and Walker Suits.

Having determined that neither of the exclusions from coverage identified by Westport apply based on the allegations in the Cooper and Walker Suits, the Policy imposes a duty on Westport to defend the Named Insureds in connection with the Cooper and Walker Suits.

### C. Duty to Indemnify

Except where there is no duty to indemnify for want of a duty to defend, "an insurer's duty to indemnify is dependent on the outcome of a case, [and] any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying claim." *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001) (citations omitted). Because Westport has a duty to defend, its request for a declaration that it has no duty to indemnify will be denied without prejudice to reassertion after the claims in the

Cooper and Walker Suits are resolved.

V. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** that:

1. The Motion for Summary Judgment by Plaintiff Westport Insurance Corporation (Doc. 44) is **DENIED** as to Westport's duty to defend in connection with the Cooper and Walker Suits and **DENIED without prejudice** as to Westport's duty to indemnify in connection with those Suits.

2. The Cross Motions for Partial Summary Judgment by Defendants Choice Hotels International, Inc. and VN Hotel Group, LLC (Docs. 47, 58) are **GRANTED**.

3. It is hereby declared that Plaintiff Westport Insurance Corporation has a duty to defend Defendants Choice Hotels International, Inc. and VN Hotel Group, LLC in connection with *Walter Cooper, et al. v. VN Hotel Group, et al.*, Case No. 6:09-cv-1540-Orl-28DAB (M.D. Fla.) and *Valerie Walker, as the personal representative of the Estate of Paul Walker, deceased, v. VH Hotel Group, et al.*, Case No. 2009-CA-039552-O (9th Jud. Cir. Orange County, Fla.) pursuant to commercial general liability policy number WCP137008238801.

4. The Court does not direct the entry of judgement under Federal Rule of Civil Procedure 54(b).

**DONE** and **ORDERED** in Chambers, Orlando, Florida this \_\_\_8th\_\_\_ day of December, 2010.

                                                    JOHN ANTOON II
                                                   United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party