# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**WESTPORT INSURANCE CORPORATION,**

        **Plaintiff,**

**-vs-**                           **Case No. 6:10-cv-222-Orl-28KRS**

**VN HOTEL GROUP, LLC, CHOICE HOTELS INTERNATIONAL, INC., V.J. CHUKKAPALLI, WALTER COOPER, ELIZABETH COOPER, ANDREW WHEATLEY, VALERIE WALKER, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF PAUL WALKER, DECEASED,**

        **Defendants.**

_____

# ORDER

In this declaratory judgment action, the sole remaining issue is whether Plaintiff Westport Insurance Corporation ("Westport") must indemnify Defendants VN Hotel Group, LLC ("VN Hotel") for damages in Defendant Valerie Walker's ("Mrs. Walker") underlying wrongful death action ("the Walker Suit").[1] The case is now before the Court on the joint motion for summary judgment filed by Westport, VN Hotels, and Mrs. Walker ("JMSJ") ( Doc. 82). As discussed below, the Court concludes that Westport has a duty to indemnify VN Hotel in connection with the Walker Suit.

_____

[1]Although this action originally encompassed two underlying cases, the second case–brought by Defendants Walter Cooper, Elizabeth Cooper, and Andrew Wheatley–has been fully resolved. (Joint Mot. for Summ. J., Doc. 82, at 2).

I. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate 'in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law.'" Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co., 541 F. Supp. 2d 1295, 1297 (M.D. Fla. 2008) (quoting TIG Ins. Co. v. Smart Sch., 401 F. Supp. 2d 1334, 1337 (S.D. Fla. 2005)).

II. Stipulated Facts[2]

Westport issued a commercial general liability insurance policy ("the Policy") to VN Hotel, which was in effect during all relevant times. (JMSJ at 3). The Policy obligates Westport to defend and indemnify VN Hotel against claims of bodily injury or property damage subject to several conditions and exclusions from coverage. (Id. at 4).

While Mrs. Walker's husband, Paul Walker ("Mr. Walker"), was a guest at the Quality Suites hotel owned by VN Hotel, he used the spa tub located in a courtyard on hotel property but outside of the hotel building. (Id. at 3). The spa tub contained Legionella bacteria, and due to Mr. Walker's use of the spa tub, he contracted Legionnaires' disease, which resulted in his death. (Id.).

---

[2] For summary judgment purposes, the parties have stipulated to these facts in their motion. (JMSJ at 3).

III.  Analysis

This Court previously determined that Westport had a duty to defend pursuant to the Policy but noted that the issue of whether Westport had a duty to indemnify was premature. (Doc. 66).  Now that the underlying claims have been resolved,[3] the issue is properly before the Court.

While the parties agree that Mr. Walker's death constituted "bodily injury" caused by an "occurrence" as defined in the Policy, they dispute whether the Policy's "Pollution Exclusion" or "Fungi or Bacteria Exclusion" applies to bar coverage.  (Id. at 6).  The parties' arguments largely rehash those made in the previous motions for summary judgment and responses thereto (Docs. 44, 47, 49, 50, 58, & 59), which were thoroughly analyzed in this Court's previous Order (Doc. 66).  The Court will not waste judicial resources repeating the same analysis here but will discuss the few arguments presented that were not addressed previously.

A.  Principles of Insurance Contract Interpretation

"The interpretation of an insurance contract is a question of law."  Kattoum v. N.H. Indem. Co., 968 So. 2d 602, 604 (Fla. 2d DCA 2007).  It is undisputed that Florida law governs the interpretation of the Policy.  "Florida law provides that insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties."  Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000).  "The scope and

_____

[3]The parties reached a settlement agreement "which completely resolved the underlying Walker suit and makes a ruling in this action on the duty to indemnify ripe for adjudication."  (JMSJ at 2; Settlement Agreement, Ex. A to JMSJ).

extent of insurance coverage is determined by the language and terms of the policy." Bethel v. Sec. Nat'l Ins. Co., 949 So. 2d 219, 222 (Fla. 3d DCA 2006). The burden rests on the insurer to show that exclusions in a policy apply. See, e.g., U.S. Concrete Pipe Co. v. Bould, 437 So. 2d 1061, 1065 (Fla. 1983).

Where language in a policy is plain and unambiguous, there is no special construction or interpretation required, and the plain language in the contract is to be given the meaning that it clearly expresses. Jefferson Ins. Co. of N.Y. v. Sea World of Fla., Inc., 586 So. 2d 95, 97 (Fla. 5th DCA 1991); U.S. Liab. Ins. Co. v. Bove, 347 So. 2d 678, 680 (Fla. 3d DCA 1977). The fact that the policy does not provide definitions of certain terms does not automatically render the terms ambiguous. Jefferson Ins. Co., 586 So. 2d at 97 (citing Travelers Ins. Co. v. C.J. Gayfer's & Co., Inc., 366 So. 2d 1199, 1201 (Fla. 1st DCA 1979)).

On the other hand, "[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous." Auto-Owners, 756 So. 2d at 34. "Ambiguous policy provisions are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy." Id. "Likewise, ambiguous insurance policy exclusions are construed against the drafter and in favor of the insured." Id. "[E]xclusionary clauses are construed even more strictly against the insurer than coverage clauses." Id. (citations omitted). "[I]n construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." Id.; see also § 627.419(1), Fla. Stat. ("Every insurance contract shall be construed according to the entirety

of its terms and conditions . . . ."). "[A]ny apparent inconsistency should be reconciled if possible." Fla. Farm Bureau Ins. Co. v. Birge, 659 So. 2d 310, 312 (Fla. 2d DCA 1994).

B. Pollution Exclusion

Westport first argues that it has no duty to indemnify because coverage is barred by the Pollution Exclusion. The Pollution Exclusion provides that the Policy does not cover:

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

(JMSJ at 4). The Policy defines "Pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed." (Id. at 5).

As it did in its first motion for summary judgment, Westport again asserts that Legionella bacteria constitutes "'contaminant[s]' within the pollution exclusion" and that therefore the Walker Suit falls within the Pollution Exclusion. (Id. at 10). Westport largely relies on the same arguments it made in its first motion for summary judgment (compare JMSJ at 7-8 with Doc. 44 at 9-12), and those arguments are rejected for the reasons set forth in this Court's previous Order (Doc. 66 at 8-10). Westport does, however, cite two cases that it did not rely on previously, which require attention.

The first case is Maxine Furs, Inc. v. Auto-Owners Insurance Co., 426 F. App'x 687 (11th Cir. 2011). In Maxine Furs, "curry aroma" from a neighboring Indian restaurant "wafted" into the plaintiff's fur store and "soiled" the furs. Id. at 688. The Maxine Furs court

determined that the curry aroma constituted a "solid, liquid, gaseous, or thermal contaminant" and therefore was a "pollutant" under an identical pollution exclusion. Id. That policy, like the one at issue in this case, did not define "contaminant," and the Maxine Furs court used the definition found in Webster's Third New International Dictionary 491 (1986), which provides that a "contaminant" is something that "soil[s], stain[s], corrupt[s], or infect[s] by contact or association." Id. Although at first blush this definition appears to support Westport's argument, the definition must be examined in the context of the Policy's language.

As was stated in the previous Order, it is not unreasonable to classify bacteria as "contaminants" in the abstract. However, the Policy language specifically requires contaminants to be "solid, liquid, gaseous or thermal" and Legionella bacteria are "living organisms [which are] not readily classified as 'solid, liquid, gaseous, or thermal' substances." (Doc. 66 at 9 (citing Keggi v. Northbrook Prop. & Cas. Ins. Co., 13 P.3d 785, 789 (Ariz. Ct. App. 2000)). Moreover, Maxine Furs is clearly distinguishable on the facts, as–unlike Legionella bacteria–curry aroma is easily and reasonably classified as "gaseous" by "a person of ordinary intelligence." Maxine Furs, 426 F. App'x at 687.

The second case Westport cites is an unpublished decision from the Middle District of Florida, Markel International Insurance Co. v. Florida West Covered RV & Boat Storage, LLC, No. 8:09-cv-2427-T-27TGW (M.D. Fla. Mar. 9 2011), (Ex. C to JMSJ). In Markel, the plaintiff allegedly "contract[ed] bacterial poisoning" and a "severe bacterial infection" when he "was forced to wade through retained flood water" that had mixed with "millings from roadwork." (Ex. C to JMSJ at 1(alteration in original)). The Markel court noted that there

was no "dispute that millings are a solid," and it focused on the issue of "whether millings are a 'contaminant' or an 'irritant.'" (Ex. C to JMSJ at 5). Westport clings to the mention of "bacteria" in <u>Markel</u>; however, the <u>Markel</u> court explicitly found that the millings–not the bacteria–were the pollutants. (<u>Id.</u> at 8). Accordingly, Westport's reliance on <u>Markel</u> is inapposite.

Westport also argues that this Court inappropriately determined that the Pollution Exclusion and the Fungi or Bacteria Exclusion were mutually exclusive and that the Pollution exclusion could not apply because the Fungi or Bacteria Exclusion more adequately addressed the situation. Westport misconstrues the Court's rationale. The Court merely noted that the existence of the Fungi or Bacteria Exclusion helps inform the construction of the Pollution Exclusion, and when the Policy is read as a whole, it confirms the Court's analysis that Legionella bacteria are not "pollutants" within the meaning of the Policy. (<u>See</u> Doc. 66 at 9); <u>see also</u> <u>U.S. Fire Ins. Co. v. J.S.U.B., Inc.</u>, 979 So. 2d 871, 877 (Fla. 2007) ("[A]lthough exclusionary clauses cannot be relied upon to create coverage, principles governing the construction of insurance contracts dictate that when construing an insurance policy to determine coverage the pertinent provisions should be read *in pari materia*." (quotation omitted)).

<u>C. Fungi or Bacteria Exclusion</u>

As with the Pollution Exclusion, in arguing for application of the Fungi or Bacteria Exclusion, Westport largely reiterates the arguments it made in its first motion for summary judgment but cites to a few new cases in support. Also, like the Pollution Exclusion cases, the cases cited to here are distinguishable, and the Fungi or Bacteria Exclusion does not

operate to prevent coverage.  Furthermore, even if the exclusion did apply, the exception to the Fungi or Bacteria Exclusion would bring the Walker suit back within coverage, and Westport would still have a duty to indemnify.

The Fungi or Bacteria Exclusion provides that the Policy does not apply to:

"Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

(JMSJ at 5).   The Court previously determined that the spa tub did not constitute a "structure" within the meaning of the Policy because "'[t]he use of the specific word building immediately followed by the word structure, requires that structure be taken in its narrow sense.'" (Doc. 66 at 13 (quoting Hartford Acc. & Indem. Co. v. Crider, 392 F. Supp. 162, 170 (N.D. Ill. 1974)).  And, "[n]arrowly defined, 'structure' means 'an edifice or building of any kind.'"  (Id. (quoting Crider, 392 F. Supp. at 170, and citing Black's Law Dictionary 1559 (9th ed. 2009))).

To support its contention that, as used in the Policy, the term "structure" unambiguously encompasses the spa tub, Westport cites to three cases where courts found the term "structure" unambiguous.  As this Court explained in its previous Order, however, "[c]ontext is critical when defining the term 'structure,' as it may be attributed a wide range of meanings," (Doc. 66 at 12 (collecting cases in which the term "structure" was  assigned different meanings depending on the context in which it was used)), and the cases cited by Westport construe "structure" in different contexts than the one at issue here.

In Akers v. Canas, 601 So. 2d 305 (Fla. 3d DCA 1992), the court determined that a deck built by easement grantees on the portion of the grantor's property subject to the easement violated a restriction in the easement stating that "no structure or addition to any structure [may] be placed on the property which is the subject of this grant of easement." Id. at 305-06. In Prinzing v. Jockey Club of North Port Owners Ass'n, 483 So. 2d 833 (Fla. 2d DCA 1986), the court determined that a "television satellite antenna dish constitut[ed] a 'structure' as contemplated by deed restrictions" which provided that "[n]o building, fence, wall or other structure shall be commenced, erected or maintained upon the properties . . . until the plans . . . have been submitted and approved . . . ." Id. at 834. Finally, the court in Barrett v. Leiher, 355 So. 2d 222 (Fla. 2d DCA 1978), concluded that a "free-standing deck" was a "structure" within the meaning of "the declaration of restrictions" applicable to all lots in a residential subdivision. Id. at 223. The restrictions provided that "[n]o structure shall be erected, altered, placed or permitted to remain on any residential lot other than one single family private dwelling with an attached garage for not less than two automobiles." Id.

Each of these cases is distinguishable. First and foremost, none of the provisions in any of the cases cited by Westport contains the phrase "building or structure." This context is critical, as the term building informs the meaning of the term structure. (See analysis in Doc. 66 at 12-14). Additionally, in Prinzing, the term "other structure"–not just "structure"– is used, and it is followed by terms that clearly embrace the broad definition of structure, such as fences and walls. Similarly, in Barrett, "structure" was used in the context of a residential community's restrictive covenant that, when read as a whole, was obviously an attempt to broadly regulate nearly every use of the property, making it logical to employ the

broad definition of structure. 355 So. 2d at 223-24 (providing, inter alia, that garages must be "attached" and "for no less than two automobiles"; that residences must be at least 1650 square feet; that "[t]railers, tents, shacks, barns or other temporary buildings of any design whatsoever, are expressly prohibited"; that fences may "be no higher than 5 feet and not to extend beyond the front corner of the house"; and that "[n]o clothes line shall be installed so as to be seen from the street in front of a residence"). And finally, in <u>Akers</u>, "structure" was used in the context of an easement where "[t]he sole purpose . . . [was] to assure [the grantees] continued access to the rear of the[ir] building," 601 So. 2d at 305-06; construing "structure" narrowly would defeat the purpose of the easement because it would allow access to the rear of the grantee's building to be blocked. Accordingly, none of the cases cited by Westport is persuasive, and for the reasons set forth in the previous Order, (Doc. 66 at 12-14), the spa tub is not a "structure" under the Policy and the Fungi or Bacteria Exclusion does not apply.[4]

Even if the Fungi or Bacteria Exclusion did apply, the Policy contains an exception to the Fungi or Bacteria Exclusion ("the Consumption Exception") that would impose a duty to indemnify on Westport. The Consumption Exception provides that the Fungi or Bacteria

---

[4] Defendants also argue that even if the spa tub were a structure under the Policy, the Fungi or Bacteria Exclusion would not apply because it requires the "inhalation" of fungi or bacteria to occur "on or within that structure"; Defendants assert that because the stipulated facts are silent as to where the actual inhalation occurred, the Court must construe the facts in their favor. To make this argument, however, Defendants cut out portions of the Policy language in a manner calculated to achieve their desired outcome, which ignores the context and plain language of the Policy. When the pollution exclusion is read as a whole, it is clear that the fungi or bacteria–not the inhalation–must be on or within a building or structure. Indeed, the Court is at a loss to even understand how "inhalation" could occur "on a building."

Exclusion "does not apply to any 'fungi' or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption." (JMSJ at 5). In its previous Order, the Court relied on Nationwide Mutual Fire Insurance Co. v. Dillard House, Inc., 651 F. Supp. 2d 1367 (N.D. Ga. 2009), in determining that the Consumption Exception applied. In Dillard House, water in a hotel hot tub from which a bather allegedly contracted Legionnaires' disease was found to be "a good or product intended for bodily consumption" under the same Consumption Exception at issue here. Id. at 1370, 1379. The Dillard House Court defined a "good" as "something that has economic utility or satisfies an economic want," id. at 1376 n12, and "consumption" as "the utilization of economic goods in the satisfaction of wants," id. at 1378. It reasoned that hotel guests bathing in a hot tub consumed the water because they entered the tub to satisfy a desire or want and that such consumption was "bodily" because "the utilization in the satisfaction of wants [was] relating to the body." Id. at 1378 (quotation omitted). This Court adopted the sound reasoning in Dillard House, and Westport has provided no authority to challenge that interpretation.[5]

IV.  Conclusion

In accordance with the foregoing analysis and the analysis set forth in this Court's previous Order (Doc. 66), it is hereby declared that Plaintiff Westport Insurance Corporation has a duty to indemnify Defendant VN Hotel Group, LLC in connection with Valerie Walker, as the personal representative of the Estate of Paul Walker, deceased, v. VH Hotel Group,

---

[5] Westport does object to Defendants' use of language in a different insurance policy to argue that Westport could have been clearer if it had intended to limit the Consumption Exception to edible products. The Court did not rely on the different policy cited to by Defendants, and therefore it need not address Westport's objection.

et al. Case No. 2009-CA-039552-O (9th Jud. Cir. Orange County, Fla.) pursuant to commercial general liability policy number WCP137008238801. The Clerk is directed to enter judgment in favor of Defendants VN Hotel Group, LLC and Valerie Walker and thereafter close this file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this 11th day of October, 2011.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party